## 10654.

### NICKLES v. MILLER *ET AL.*

#### (108 S. E. 90)

1. PRINCIPAL AND AGENT—ACTION HELD ONE FOR ACCOUNTING BE-TWEEN PRINCIPAL AND AGENT INSTEAD OF ON AN ACCOUNT OR JUDG-MENT.—Principal's action against agent against whom principal had previously obtained a judgment *held* an action for accounting between principal and agent, and not an action on an account or judgment.

2. REFERENCE—REFERENCE HELD PROPER IN PRINCIPAL'S ACTION FOR ACCOUNTING AGAINST AGENT ON COMPLICATED ACCOUNT.—Principal's action against confidential agent for accounting in which the account was complicated and obscure *held* a proper case for a reference.

3. WITNESSES—DEATH STOPS PAROL EVIDENCE AS TO CONTRACT PARTLY IN PAROL AND PARTLY IN WRITING.—Where a contract is partly in writing and partly in parol, death stops the parol evidence, and the writing stands.

4. JUDGMENT—PRINCIPAL'S COMPLAINT AGAINST AGENT HELD TO STATE A CAUSE OF ACTION ON A JUDGMENT.—Principal's complaint against agent held to state a cause of action on a judgment.

5. APPEAL AND ERROR—DEFENDANT IN LAW ACTION, HAVING DE_ MANDED AN ACCOUNTING INVOLVING LONG AND INTRICATE ACCOUNT COULD NOT COMPLAIN OF REFERENCE.—In principal's action against agent on a judgment, wherein defendant's answer was practically a demand and an offer for an accounting by which to demonstrate that the judgment had been paid where the account was a long and intricate one, the agent could not complain that the matter was referred to a referee on the ground that it was an action at law having himself tendered the equitable issue.   (Per Cothran, J.)

Before WILSON, J., and PRINCE, J., Abbeville, March, 1916, and March, 1919.   Affirmed.

Action by Sue A. Kellar, for whom was substituted W. F. Nickles as executor of her estate, against L. T. Miller and Fannie E. Wilson, as executors of the estate of M. H. Wilson, deceased.   From order of Judge Wilson referring the case to a Special Referee, and from the decree of Judge Price, the defendants appeal.

The referee's report and the order of the trial Judge, referred to in the opinion, are as follows:

## REPORT.

This case was referred to me by order of the Circuit Court for Abbeville County as special referee to take the testimony and report my finding of fact and conclusions of law on the issues raised by the pleadings.   A reference was held at Abbeville June 14, 1916, and  continued  at Anderson May 21, 1917, at which a deposition of Mrs. Kellar was

read, testimony taken, and affidavit of L. T. Miller by consent admitted in evidence. Exhibits were admitted in evidence at Abbeville numbered from 1 to 21, inclusive and at and from 1 B to 12 B, inclusive. A stenographic copy of the testimony, the affidavit, deposition and all the exhibits except the excerpts from the master's books are herewith submitted, together with the minutes of the reference as part of the report.

The case is brought on a judgment of the Probate Court for Abbeville County, dated January 24, 1909, whereby it was adjudged that M. H. Wilson, as administrator of the estate of Miss Jane L. Gordon, deceased, pay to plaintiff, Mrs. Susan A. Kellar, $626.42 on a partial distribution of funds from the estate of Jane L. Gordon, deceased, this being Mrs. Kellar's distributive share of the amount shown to be due from funds then ready for distribution.

This judgment is admitted by the answer and payment is pleaded. This issue of whether this judgment has been paid is the only one in the case.

By a subsequent judgment of the said Probate Court it was adjudged that an additional sum of $127.58 was due the plaintiff, Mrs. Kellar, as her share in the final distribution of the said estate, but it is conceded that this has been paid, and I find that it was paid by check of M. H. Wilson, administrator, to Mrs. Sue A. Kellar, dated April 13, 1910, for $128. In addition to these funds I find that Mrs. Kellar received from the sale of real estate of Miss Jane L. Gordon, through the master's office on December 26, 1906, $1,000, and on November 16, 1909, $1,444.75.

The third paragraph of the answer alleges that during the years 1909 and 1910 M. H. Wilson paid to Mrs. Kellar about $2,838.07, and it claimed that the judgment sued on was paid by some of these amounts. The fourth paragraph sets out these various payments, and, as it is by these or some of them that the defendant must show satisfaction

of the judgment, if at all, I shall give my findings of them
in detail.   I find that there is no evidence of the payment of
$900 alleged to have been paid Mrs. Kellar on January 22,
1909, by M. H. Wilson, but that Mrs. Kellar loaned J. T.
Hunter $900 of her money then on hand, said sum being
withdrawn from her amount in People's Savings Bank of
Abbeville by her check, and I find that the second item of
$200, loaned to Mrs. Fannie M. Speed, was loaned from
Mrs. Kellar's own funds then on hand and withdrawn from
her account in said bank on her own check signed in her
name by M. H. Wilson as her agent.   I find the same to
be true as to the third item, to wit, $600 loaned to J. H.
Moore and J. M. Mars, except that the check of Mrs. Kellar
was signed in her name by another agent. As to the fourth
item I find that M. H. Wilson loaned W. D. Barksdale $300
of Mrs. Kellar's money on the date alleged, checking on
her bank account for same, and $300 of his own funds on
his check as administrator, taking a note and mortgage pay-
able to his order to evidence and secure payment of the loan.
That was paid on or about January 5, 1910, on which date
M. H. Wilson gave to her his check for $268.78 as her net
share of the proceeds of the collection.   This check is the
eighth item of credits alleged in the answer.   I find that M.
H. Wilson collected $660 from W. D. Barksdale in payment
of this loan, of which Mrs. Kellar's share would normally
be $230, she having advanced one-half of the principal. He
stated at the time of making this payment to her credit that
the $268.78 paid to her was her share, and in the absence
of any clear explanation of the discrepancy I assume that
there was some reason for this arrangement and find that
this amount cleared him of further liability to her on ac-
count of this Barksdale loan.   The only evidence offered of
the seventh item of $15 paid December 16, 1909, to wit, a
check of S. A Kellar to L. W. Kellar & Bro. bearing that
date, showed that this amount was not paid for her by M.

H. Wilson. I have already stated that the ninth item, a payment of $128 to Mrs. Kellar, was to satisfy or pay a judgment in the Probate Court for her share in the final distribution of the estate of Miss Jane L. Gordon. The eleventh item of $20.10 paid January 5, 1910, appears from the evidence to have been paid by Mrs. Kellar's check on her own account, signed in her name by M. H. Wilson, as her agent, to Philson Henry & Co.

The allegations relating to the thirteenth item refer to a loan made to L. T. Miller. The testimony of W. F. Nickles shows this to have been made to L. T. Miller by Mrs. Kellar in 1906 out of her own money. Her passbook with the People's Savings Bank contains an entry of a check on her account for $175 to L. T. Miller. Mr. Miller in his testimony states that this loan was paid by him, but he does not deny that he borrowed her money from her. There is no proof that Mr. Wilson should have credit for this amount.

I find that none of these items above referred to can constitute a credit or payment by M. H. Wilson on the judgment sued on. I recall no testimony to substantiate the fourteenth item of credit claimed, to wit, $4.79 cash paid to Mrs. Kellar by Mr. Wilson. This must therefore be disallowed.

I find that the other items claimed as payments are fully proved, to wit: $13.21 paid June 4, 1909; $15 paid February 3, 1908; $25 paid July 19, 1910; and $36.99 paid September 12, 1910.

Defendant's counsel also proved to my satisfaction that Mr. Wilson paid Mrs. Kellar $42.95 on or about February 16, 1903, and $14.88 on or about January 15, 1903. These are proved by entries in Mr. Wilson's account book as administrator, and in the absence of any testimony showing that the administrator was indebted to her on any other account, and in view of the proof as to his scrupulous integ-

rity, I think that he should have credit on account of this
judgment for these amounts.   It is contended that these
amounts were deducted by Mr. Wilson from Mrs. Kellar's
share of the proceeds of the Barksdale loan, thereby reduc-
ing the amount put to her credit from $330 to $268.78.   It
is of course entirely possible that this was done.   Such ex-
planation is not entirely satisfactory, however, as these pay-
ments would not entirely account for the deduction, and Mr.
Wilson is reported to have said that the amount   he   de-
posited was Mrs. Kellar's share of the proceeds of the col-
lection, not the net amount he owed her on all accounting to
that date, or of the amount he owed her in addition to the
judgment in her favor.   Some element must have entered
into this Barksdale loan which the subsequent death of Mr.
Wilson prevents our knowing, and by reason of which she
was entitled to only $268.78 of this money.   The payments
of $14.88 and $42.95 were made prior to the rendering of
the judgment in the Probate Court, it is true, and it is there-
fore rather irregular to consider them as payments on this
judgment, but it is not unusual to have the judgment in
such cases represent the total amount of the share of the
distribution, and then by a private accounting adjust the
mutual account in making payment.   The payments were
made, and I think it but just that Mr. Wilson have credit
for them on this account.

It was earnestly and ingeniously contended in argument
that the total of loan made by Mrs. Kellar and of the dis-
bursements made by her for other purposes when deducted
from her known and established sources of funds would
leave her so small an amount for living expenses that she
must necessarily have been paid this judgment in order to
live.   This calculation, however, leaves out the interest
which her bank book in evidence shows she received, and
furthermore it is not proved that she was solely or indeed

at all dependent on the funds received from the Gordon estate for her living expenses.

It is contended, as evidencing the fact that the check for $128 given by Mr. Wilson to Mrs. Kellar in payment of the balance due on the final settlement of the Gordon estate on April 13, 1910, was intended also to be in full payment of all amounts due to her by Mr. Wilson, that he thereafter drew no other checks in her favor, although he lived nearly two years after that date. This argument overlooks the $25 check of July 9, 1910, and $36.99 paid by him to cover her overdraft on September 12, 1910.

I do not conceive that the conclusions I have reached that Mr. Wilson owed Mrs. Kellar the bulk of her judgment in any wise impeaches his admitted honesty and integrity in his dealings with her and with all other persons. He was doubtless careful and zealous in her interest always. He never, so far as the testimony shows, claimed to have discharged his admitted debt to her. According to the clear testimony of Mr. Nickles, he in his mind sat aside a mortgage of W. D. Barksdale drawn in his favor doubtless for convenience in making satisfaction of it and otherwise, as representing the bulk of her estate unaccounted for. With so careful a business man as the testimony shows him to have been, the fact that, while he filed receipts and discharges from all the other distributees of the estate, he filed none from her, is indicative that he had not put all her money in her name or turned it into her bank account or paid it to her.

As plaintiff's counsel argued, he proceeded on the assumption which we are too prone to entertain that he would live long and could finish his settlement later. He died without warning before carrying out his generous and fair intentions toward his sister's affairs. His sudden death and the lack of acquaintance with her business affairs on the part of his sister unfortunately leaves some doubt as the accu-

racy and completeness of my findings, but with the lights before me I must conclude, and so find, that plaintiff is entitled to recover against defendants as his administrators the amount of the judgment less the payments above found to have been proved. The judgment must bear interest from its date at 7 per cent. per annum. It might be equitable to credit the estate with some commissions for making loans, etc., but of this there is no proof.

I find that there is due plaintiff to the date of this report $667.18.

## ORDER.

Upon the call of the above-entitled action for trial, a motion was made by plaintiff's attorney that the issues in the case be referred to a referee for trial. It appeared to my satisfaction, from the statements of counsel for the plaintiff, that the trial of cause would require the examination and investigation of long and intricate accounts which would require considerable and very tedious work. In addition to counsel's statement, the plaintiff's attorneys have filed affidavits herein in confirmation of counsel's statement in regard to the trial requiring an investigation of long and intricate accounts. In addition to this, Mr. W. F. Nickles, cashier of Peoples' Bank, has filed his affidavit to the same effect. It appears to me that this is a case which should more properly be referred to a special referee to try. It is therefore, on motion of Wm. P. Greene and D. H. Hill, plaintiff's attorneys, ordered that the issues raised by the pleading herein be, and the same are hereby, referred to T. Frank Watkins, Esq., of Anderson, S. C., to take the testimony and report to this Court his findings of fact and of law.

*Messrs. Graydon & Graydon,* for appellant, cite: *Case should have been tried by a jury:* Sec. 312, Code Proc. 1912; 17 S. C. 32; 91 S. C. 417; 17 S. C. 538; 43 S. C. 299; 85 S. C. 69.

*Messrs. D. H. Hill and Wm. P. Greene,* for respondent,
cite: *Case properly referred*: Sec. 331, Code Proc. 1912.
*Not appealable*: 49 S. C. 423; 87 S. C. 372; 64 S. C. 290.
*Trial of a long and complicated account may be referred*:
112 S. C. 356, 99 S. E. 830; 64 S. C. 293.

June 30, 1921.

The opinion of the Court was delivered by MR. JUSTICE
FRASER.

This is an action to enforce a judgment of the Probate
Court, but involves an accounting between principal and
agent. The case was put on calendar No. 1 by the plain-
tiff's attorney. Upon the call of the case for trial, the
substituted plaintiff's attorney moved that the case be re-
ferred to a referee to take the account and report his find-
ings thereon to the Court. When the Court found that the
account was complicated and obscure, and that it involved
an accounting between those standing in a fiduciary rela-
tion, the presiding Judge referred the case to a referee.

I. This order of reference presents the first ques-
1, 2    tion for this Court. The exception that raises this
question cannot be sustained. This action is not
an action on an account or judgment, but an action for
accounting between principal and confidential agent. The
account is complicated and obscure and presents a proper
case for a reference to a referee.

II. Both principal and agent are dead. There was a
judgment against the agent in favor of the principal. The
agent was the general agent of the principal, and paid her
money from time to time, but there is no satisfactory evi-
dence to show that the payments were made on account of
that judgment, and the referee and Circuit Judge were cor-
rect in so holding.

This is just one of those unfortunate cases in which two perfectly honorable people, closely allied in blood and mutual confidence, have a part of their business in writing and part in parol. Death stops the parol evidence, and the writing stands.

The judgment is affirmed. Let the report of the referee and the order of the trial Judge be reported.

MR. CHIEF JUSTICE GARY concurs.

MR. JUSTICE WATTS: I dissent. I think judgment should be reversed. It is a legal action pure and simple, and appellant has been denied substantial rights in not having a trial by jury.

MR. JUSTICE COTHRAN.

I concur in this judgment, but think that the exceptions raising the question of the propriety of referring the case should be overruled, not upon the ground stated in the leading opinion: "This action is not an action on an account or judgment, but an action for accounting between principal and confidential agent," for the complaint shows that it was upon a judgment of the Probate Court, but upon the ground that the defendant's answer was practically a demand and an offer for an accounting, by which to demonstrate that the judgment had been paid. The defendant cannot therefore complain if the equitable issue tendered by him, involving, as was developed, a long and intricate account, and transactions between prinpal and confidential agent or trustee, was remitted for trial to a tribunal admittedly most capable of determining it. Particularly is this true where, as it appeared here, "it would be impracticable for an ordinary jury to comprehend and decide the issues correctly." *McCabe v. Mercantile Co.,* 106 S. C. 25; 90 S. E. 161.